UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
--------------------------------X
VANCE JACKSON,

                Petitioner,

                                  MEMORANDUM AND ORDER
      -against-                 19-CV-4444(JS)

STEWART ECKERT,

                Respondent.
--------------------------------X
APPEARANCES
For Petitioner:    Vance Jackson, Pro Se
                   #11-A-0701
                   Auburn Correctional Facility
                   P.O. Box 618
                   Auburn, New York 13024

For Respondent:    Rosalind C. Gray, Esq.
                   Suffolk County District Attorney's Office
                   200 Center Drive
                   Riverhead, New York 11901

SEYBERT, District Judge:

           Following a state court jury trial, Petitioner Vance Jackson ("Petitioner") was convicted of: four counts of New York Penal Law § 140.30, Burglary in the First Degree; three counts of New York Penal Law § 160.15, Robbery in the First Degree; three counts of New York Penal Law § 120.10, Assault in the First Degree; one count of New York Penal Law § 120.05, Assault in the Second Degree; one count of New York Penal Law § 265.03, Criminal Possession of a Weapon in the Second Degree; and one count of New York Penal Law § 260.10, Endangering the Welfare of a Child (hereafter, the "Conviction").  Before the Court is Petitioner's

pro se petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254 (hereafter, the "Petition"), arising out of his Conviction. He raises four claims that he contends warrants habeas relief. (See Petition, ECF No. 1, at ECF p. 29; see also infra at 17-18.) Respondent Stewart Eckert ("Respondent") opposes the Petition (see Opp'n, ECF No. 15; see also Opp'n Support Memo, ECF No. 15-1), to which Petitioner has replied (see Reply, ECF No. 18). For the following reasons, the Petition is DENIED in its entirety.

BACKGROUND

I.   The Offense Conduct

On August 28, 2009, in broad daylight, Petitioner and others committed an armed home invasion robbery of Aaron Johnson's home. (See Tr.-1[1] at 546:5-547:21.) The impetus for the Johnson home robbery was a physical altercation Johnson had with his co-worker named Anthony Henderson ("Henderson"). (Tr.-1 at 545:5-

---

[1] Petitioner's trial commenced on September 21, 2010 and ended on October 14, 2010. The transcripts of the trial are found as attachments to ECF No. 17. The pages of these transcripts are numbered sequentially in two separate sets of minutes. As such, "Tr.-1" shall refer to the trial conducted from September 21, 2010 through October 1, 2010, and "Tr.-2" shall refer to continued trial conducted from October 7, 2010 through October 14, 2010. In addition, the transcript of Petitioner's sentencing hearing is found at ECF No. 17-16. Herein, the Court will cite to the internal pages of the various transcripts using the following format: for trial-related transcripts as "(Tr.-[1 or 2] at [page number]:[line number(s)])" and for sentencing-related transcripts as "(Sent'g Tr. at [page number]:[line number(s)])".

23; 542:12-17, 545:2-4.)    The altercation resulted in Johnson shattering Henderson's eye socket.  (Tr.-1 at 545:9-546:2.)

Sometime thereafter, Henderson approached Theodore Briggs ("Briggs") and Steven White ("White"), telling them that he knew that Johnson kept large quantities of cash and cocaine at his home in Huntington, New York.  (Tr.-1 at 1127:14-22.)  The three men planned to rob the Johnson home.  (Tr.-1 at 1128:3-12.)  They discussed likely getting about $10,000 in cash and large quantities of cocaine from the home.  However, Henderson did not ask to share in the loot, insinuated that the robbery was payback for Johnson beating him up.  (Tr.-1 at 1129:22-1130:5; 1131:5-10.)

Thereafter, about two weeks before the robbery, Petitioner asked Briggs if he could set up any "licks", or robberies; Briggs told Petitioner about Johnson's home.  (Tr.-1 at 1123:16-1124:3.)  Petitioner stated that the home was a perfect target, and that he would supply the people and the guns for the robbery.  (Tr.-1 at 1131:17-20.)

On August 28, 2009, the day of the robbery, Petitioner met up with Briggs, White, Benjamin Thompson ("Thompson"), and Natalie Desir ("Desir"), and directed the four of them on how the robbery would take place, including discussing: (1) the guns to be used; (2) how many vehicles they would drive from Brooklyn to Suffolk County; (3) who would sit in which car and where; and (4) the route they would take.  (Tr.-1 at 1138:22-1139:23.)  Henderson

met the group at a gas station in Huntington, provided gloves to Petitioner, and led the group to Johnson's home.  (Tr.-1 at 1143:15-1145:3.)

Johnson was home with his fiancée, Elizabeth Careccia ("Elizabeth"), their toddler daughter ("Daughter"), and Elizabeth's mother, Mary ("Mary"), and two younger brothers.  At noon and while holding Daughter, Elizabeth answered a knock at the door, finding Thompson and Desir.  Using a ruse (Tr.-1 at 542:22-25;  546:5-19;  432:20-433:12;  1148:5-23),  Thompson and Desir persuaded Elizabet to unlock the screen door.  Then, Thompson took out a gun and threatened to shoot Daughter.  Thompson and Desir forced their way into the Johnson home with Petitioner following behind them.  (Tr.-1 at 435:11-436:9; 438:23-439:13; 1151:6-15.)

Johnson took Petitioner upstairs to stall while Elizabeth, Daughter, and Mary were kept in the living room with Thompson and Desir.  (Tr.-1 at 447:15-448:4.)  Then he heard a gunshot coming from downstairs as Briggs had shot Elizabeth in the foot when she attempted to reach for the phone.  (Tr.-1 at 448:15-449:11; 553:17-24.)  Contemporaneously, Petitioner told Johnson "see we aren't playing", at which point Johnson handed over everything in his pockets, including his keys, cell phone, and a couple hundred of dollars, to Petitioner.  Unsatisfied, Petitioner shot Johnson in the neck.  (Tr.-1 at 551:22-552:2; 552:23-553:11.) Johnson then gave Petitioner $8,500 cash proceeds from his

4

landscaping business, although dropped it on the floor to make Petitioner bend over to retrieve it.  (Tr.-1 at 554:24-555:25.)  A scuffle ensued during which Johnson was shot several more times, but he, Elizabeth, and Mary managed to push the robbers out the door, after which all the assailants fled in a getaway car.  (Tr.-1 at 556:3-557:12; 558:21-559:16; 561:2-9.)

        As the car drove away, Thompson and Petitioner tried to wash the blood off their hands using water bottles in the car.  (Tr.-1 at 1155:13-16.)  Petitioner and the others abandoned the getaway car after seeing a police car at a stop light, and Petitioner and Thompson fled on foot together.  (Tr.-1 at 1157:19-1158:20; 1159:4-8.)  On-patrol Police Officers Brian Keegan and Paul Rocchio located and apprehend Petitioner and Thompson later that day in a railyard where they were hiding.  (Tr.-2 at 166:5-15; 166:23-168:22; 175:16-176:24; 173:6-9.)  When they were apprehended: Petitioner was holding a bloody napkin and had a pair of gloves in one pocket, and a large amount of cash in another; Thompson was also found in possession of a large amount of cash.  (Tr.1 754:4-755:10; Tr.-2 at 177:11-21.)  Later, both Petitioner and Thompson tested positive for gunshot residue on their hands.  (Tr.-2 at 265:8-266:3.)  Desir and Briggs were arrested at a later date.

jail for the rest of my life.  I was just a homeless guy that was taking a nap," (Hr'g Tr.-1 at 89:22-90:2); and, thereafter, he left the interview room.  (Hr'g Tr.-1 at 90:3-5.)

A <u>Huntley</u> hearing was conducted prior to Petitioner's trial to determine the admissibility of his statements made to Detective Favata.  (<u>See generally</u> Hr'g Trs.)  The hearing court ruled that the circumstances of Detective Favata's introduction were not designed or construed to elicit an incriminating response; therefore, they were not subject to suppression.  Rather, because Petitioner's statements were spontaneous, they were admissible. (Hr'g Tr.-3 at 20:18-21:10.)

III. <u>The Trial</u>

Petitioner's trial commenced on September 21, 2010.  At trial, the prosecution presented testimony from: law enforcement witnesses, including Detective Favata and Police Officers Keegan and Rocchio; victims, including Johnson, Elizabeth, and Mary; and accomplices Desir and Briggs.  Defense counsel did not present a case.

Prior to summations, during the charge conference, the prosecution requested that the trial court instruct the jury on a theory of recent and exclusive possession of stolen property. (Tr.-2 at 477:6-13.)  Defense counsel objected to the charge being read to the jury, arguing that there was no direct evidence that the money in Petitioner's possession belonged to Johnson, as

opposed to Thompson who had in his possession money with Johnson's blood on it.  (Tr.-2 at 477:16-478:2.)  The trial court granted the prosecution's request for the charge, explaining that the jurors were not required to infer the possession was unlawful. The charge stated:

> [I]f the People prove beyond a reasonable doubt that the defendant was in exclusive possession of property recently stolen during [a robbery or burglary] and that there is no [innocent] explanation for that possession, then you may[,] but are not required to[,] infer that the possession was guilty possession.

(Tr.-2 at 477:3-25.)

During defense counsel's summation, counsel argued: (1) that Briggs and Desir were the masterminds behind the burglary, with Petitioner merely a "patsy played by a bunch of thieves" (Tr.-2 at 1250:8-13); (2) that White, and not Petitioner, was actually the perpetrator responsible for burglarizing Johnson's home (Tr.-2 at 1275:8-23); (3) that Petitioner did not have enough injuries to indicate that he fought with Johnson (Tr.-2 at 1275:24-1276:20); (4) that Elizabeth wrongly identified Petitioner only at Detective Favata's suggestion (Tr.-2 at 1277:15-1278:19); and (5) that Detective Favata aggressively pursued Petitioner as a suspect in the burglary investigation, calling upon the prosecutor to explain why White was not pursued as a suspect (Tr.-2 at 1264:5-16; 1276:17-20).

During the prosecution's summation, the prosecutor rebutted defense counsel's arguments, stating: (1) there was no evidence supporting Petitioner was a "patsy" and referring to him in such a manner required speculation (Tr.-2 at 1328:4-24); (2) that defense counsel's explanations are like spaghetti, since counsel threw out explanations to see what would stick (Tr.-2 at 1332:17-24); (3) that Detective Favata had investigated White and attempted to interview him, but he was precluded in doing so because White requested an attorney (Tr.-2 at 1333:14-1334:15); (4) that, as with Petitioner, when White requested an attorney, police questioning of him ceased. (Tr.-2 at 1334:15-18); and (5) that there was no evidence Briggs and Desir knew each other, but only that they knew their respective "piece of the puzzle" (Tr.-2 t 1342:3-14;1373:8-12).

After summations, the trial court instructed the jury on the applicable law. Thereafter, the court received a jury note requesting a readback of "Detective Favata's testimony regard Liz's description of the suspect." (Tr.-2 at 1507:8-18.) The requested testimony referred to a portion of defense counsel's cross-examination of Detective Favata regarding Elizabeth's description of Petitioner. In response, the prosecution asked that a portion of Detective Favata's redirect also be read back, arguing it was necessary to provide proper context to the requested testimony. (Tr.-2 at 1547:13-19.) Defense counsel objected

because the jurors did not request readback of the redirect. (Tr.-2 at 1547:23-1548:2.)  The trial court overruled defense counsel's objection and allowed readback of the redirect, together with the requested testimony, to ensure that the testimony would not be taken out of context (Tr.-2 at 1548:3-12).

After deliberating, the jury convicted Petitioner. (See Tr.-2 at 1598:16-1600:23.)

IV.  The Sentence

On February 8, 2011, Petitioner was sentenced to an indeterminate sentence of 25-years-to-life imprisonment on each of the following charges: Burglary in the First Degree under count 1; Burglary in the First Degree under count 2; Robbery in the First Degree under Count 5; Robbery in the First Degree under count 7; Assault in the First Degree under count 8; Assault in the First Degree under count 10; and, Criminal Possession of a Weapon in the Second Degree under count 14.  (See Sent'g Tr. at 1; 37:5-22.) For each of aforementioned counts, the sentences run concurrent with each other, but consecutively with the 25-years-to-life sentence imposed on the following counts: Burglary in the First Degree under count 3; Burglary in the First Degree under count 4; Robbery in the First Degree under count 6; Assault in the First Degree under count 11; and, Assault in the Second Degree under count 13.  (See id. at 37:23-38:16.)  Petitioner was further sentenced to one year on count 16, Endangering the Welfare of a

Child, to run concurrently.  (See id. at 38:17-24.)  Each grouping of 25-years-to-life sentences run concurrently but consecutively with each other; thus, Petitioner was subject to an indeterminate sentence of 50-years-to-life imprisonment.  (Id. at 38:15-16.)

V.    The Appeal

In October 2015, and through counsel, Petitioner appealed his conviction and sentence to the Second Department. (See App. Br., ECF No. 16-4, at ECF pp. 289-352.)  He raised four arguments: (1) his statements were the result of the functional equivalent of an interrogation and should have been suppressed (see id. at ECF pp. 336-37); (2) improper summation comments deprived him of a fair trial (see id. at ECF pp. 338-343) (3) evidentiary errors deprived him of a fair trial[3] (see id. at ECF pp. 344-92); and (4) the sentence imposed was harsh and excessive (see id. at ECF pp. 348-49).

The Second Department affirmed the judgment finding: as to Petitioner's suppression argument, that the hearing court properly denied the motion to suppress Petitioner's statements to police, and that the statements "were spontaneous and not the result of interrogation or its functional equivalent"; as to

---

[3]    Petitioner's claim included arguments that the trial court improperly: (1) granted the prosecution's request for a jury charge regarding recent and exclusive possession; and (2) permitted a readback of Detective Favata's redirect testimony in response to a jury note. (See id. at ECF pp. 345.)

Petitioner's argument regarding evidentiary errors, that the court "providently exercised its discretion in giving an expanded readback of the testimony of a police detective in order to provide a complete response to the jury's inquiry"; as to Petitioner's improper summation comments argument, the argument that the comments deprived Petitioner of a fair trial was without merit and, for the most part, the prosecutor's statements "constituted fair comment on the evidence and the inferences to be drawn therefrom, or were fair responses to defense counsel's comments during summation" and "any improper statements were not so flagrant or pervasive as to deny the defendant a fair trial;" and, as to Petitioner's remaining contentions, they were without merit. People v. Jackson, 150 A.D.3d 1025, 1025-26, 55 N.Y.S.3d 338 (2d Dep't 2017).[4]  Petitioner sought leave to appeal to the New York State Court of Appeals, which was denied on July 26, 2017.  See People v. Jackson, 29 N.Y.3d 1092, 85 N.E.3d 103, 63 N.Y.S.3d 8 (2017).

VI.  Writ of Error Coram Nobis

On June 9, 2018, Petitioner filed a pro se motion for a writ of coram nobis, in the Appellate Division, Second Department. (See June 9, 2018 Pet. Writ of Error Coram Nobis.) Petitioner

---

[4]  Also docketed in the instant case at ECF No. 16-4 at ECF pp. 238-39.

argued that his appellate counsel's representation on direct appeal was ineffective based on three errors, that counsel failed to argue on appeal: (1) that Petitioner was denied his right to testify before the Grand Jury; (2) that Petitioner was denied his right to testify at trial due to the trial court's failure to suppress an excited utterance; and (3) that Petitioner was arrested without probable cause, and, as such, any evidence seized thereafter should have been suppressed as fruit of the poisonous tree. (See June 9, 2018 Pet. Writ of Error Coram Nobis at pp. 3-16.)

On November 14, 2018, the Second Department denied Petitioner's application because he "failed to establish that he was denied the effective assistance of appellate counsel." People v. Jackson, 166 A.D.3d 803, 85 N.Y.S.3d 790 (2d Dep't 2018). Petitioner's application for leave to appeal to the New York Court of Appeals was denied on February 13, 2019. People v. Jackson, 32 N.Y.3d 1205, 122 N.E.3d 1112, 99 N.Y.S.3d 199 (2019).

This Petition followed.

DISCUSSION

I. The Legal Standard

"It is well established that a federal habeas court does not sit to correct a misapplication of state law, unless such misapplication violates the Constitution, laws, or treaties of the United States." Ponnapula v. Spitzer, 297 F.3d 172, 182 (2d Cir.

2002).   Pursuant   to   28   U.S.C.   §2254,   as   amended   by   the
Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"),
a habeas court considering a claim that was decided on the merits
in a state court proceeding may grant relief only if the state
court's decision was (1) "contrary to, or involved an unreasonable
application of, clearly established Federal law, as determined by
the Supreme Court of the United States"; or (2) "based on an
unreasonable determination of the facts in light of the evidence
presented in the State court proceeding."  28 U.S.C. §2254(d)(1)
& (2).

The AEDPA establishes a deferential standard of review:
"a federal habeas court may not issue the writ simply because that
court  concludes  in  its  independent  judgment  that  the  relevant
state-court  decision  applied  clearly  established  federal  law
erroneously or incorrectly.  Rather, that application must also be
unreasonable."  Williams v. Taylor, 529 U.S. 362, 411 (2000); see
also Virginia v. LeBlanc, 137 S. Ct. 1726, 1729 (2017); McBride v.
Perez, No. 13-CV-4792, 2015 WL 5245072, at *8 (S.D.N.Y. June 25,
2015) ("'[I]t is not the province of a federal habeas court to
reexamine state-court determinations on state-law questions.  In
conducting habeas review, a federal court is limited to deciding
whether a conviction violated the Constitution, laws or treaties
of the United States.'" (quoting Estelle v. McGuire, 502 U.S. 62,
67-68 (1991)).  The requirements set forth by the AEDPA are

strictly construed and, by design, erect a barrier to federal habeas relief founded upon the principle that "[s]tate courts are adequate forums for the vindication of federal rights" and are "presumptively competent[] to adjudicate claims arising under the laws of the United States." Burt v. Titlow, 571 U.S. 12, 19 (2013) (internal quotation marks and citation omitted).  The AEDPA "'imposes a highly deferential standard for evaluating state-court rulings and demands that state-court decisions be given the benefit of the doubt.'" Jones v. Murphy, 694 F.3d 225, 234 (2d Cir. 2012) (quoting Hardy v. Cross, 565 U.S. 65, 66 (2011)).  Hence, a habeas corpus petition is not a vehicle to relitigate every issue previously determined in state court. See Herrara v. Collins, 506 U.S. 390, 401 (1993).

Under § 2254(d)(1), applicable here, a state court decision is considered "contrary to" federal law if it either "applies a rule that contradicts the governing law set forth in [the Supreme Court's] cases" or "confronts a set of facts that are materially indistinguishable from a decision of [the Supreme Court] and nevertheless arrives at a result different from [Supreme Court] precedent."  Williams, 529 U.S. at 405-06.  "'Clearly established Federal law' means 'the holdings, as opposed to the dicta, of [the Supreme] Court's decisions as of the time of the relevant state-court decision.'" Green v. Travis, 414 F.3d 288, 296 (2d Cir. 2005) (alteration in original) (quoting Williams, 529

U.S. at 412).  An "unreasonable application" of federal law occurs where the state court "correctly identifies the governing legal rule but applies it unreasonably to the facts of a particular prisoner's case."  Williams, 529 U.S. at 407-08.  "The critical point is that relief is available under § 2254(d)(1)'s unreasonable application clause if, and only if, it is so obvious that a clearly established rule applies to a given set of facts that there could be no fairminded disagreement on the question."  White v. Woodall, 572 U.S. 415, 427 (2014) (internal quotation marks and citations omitted).  Ultimately, "the petitioner bears the burden of proving by a preponderance of the evidence that his constitutional rights have been violated."  Jones v. Vacco, 126 F.3d 408, 415 (2d Cir. 1997); see also Hawkins v. Costello, 460 F.3d 238, 246 (2d Cir. 2006).

Assuming a petitioner's claims are cognizable on habeas review, a petitioner must exhaust state court remedies before coming to federal court.  Exhaustion of state court remedies requires that a petitioner fairly present the claim in state court, allowing the state court the "'opportunity to pass upon and correct alleged violations of its prisoners' federal rights.'"  Jackson v. Edwards, 404 F.3d 612, 619 (2d Cir. 2005) (quoting Picard v. Connor, 404 U.S. 270, 275 (1971)).  "A petitioner has 'fairly presented' his claim only if he has 'informed the state court of both the factual and the legal premises of the claim he asserts in

federal court.'" <u>Jones v. Keane</u>, 329 F.3d 290, 294-95 (2d Cir. 2003) (quoting <u>Dorsey v. Kelly</u>, 112 F.3d 50, 52 (2d Cir. 1997)). "Specifically, [petitioner] must have set forth in state court all of the essential factual allegations asserted in his federal petition; if material factual allegations were omitted, the state court has not had a fair opportunity to rule on the claim." <u>Daye v. Att'y Gen. of N.Y.</u>, 696 F.2d 186, 191-92 (2d Cir. 1982) (collecting cases).

Moreover, a federal court will not review a habeas petition if a petitioner's claims were decided at the state level on "independent and adequate" state procedural grounds. <u>Coleman v. Thompson</u>, 501 U.S. 722, 731-32 (1991). This procedural bar applies even if the state court addressed the merits in the alternative, but decided the claim on independent procedural grounds. <u>See</u> <u>Velasquez v. Leonardo</u>, 898 F.2d 7, 9 (2d Cir. 1990). To obtain review of procedurally barred claims, a petitioner must show either (1) "cause for the default and actual prejudice as a result" or (2) actual innocence. <u>Coleman</u>, 501 U.S. at 750.

II. <u>Application</u>

Petitioner raises four claims in his habeas Petition: (1) that his statements to law enforcement were taken in violation of his Fifth, Sixth, and Fourteenth Amendment rights; (2) that improper summation comments denied his right to a fair trial; (3) that the trial court denied his right to a fair trial in response

17

to a jury note and in providing a jury instruction; and (4) that he received ineffective assistance of appellate counsel. (See Pet. at ECF pp. 29, 75-91.)

A. Statement Suppression Claim

Petitioner asserts that his statements were taken in violation of his Fifth, Sixth, and Fourteenth Amendment rights. (Pet. at ECF pp. 75-78.) Petitioner argues that he requested an attorney, yet Detective Favata engaged him in the functional equivalent of an interrogation. (Id.) Thus, Petitioner argues that he is entitled to habeas relief.

Petitioner raised his claim on direct appeal and the Appellate Division rejected it, stating that the statements "were spontaneous and not the result of interrogation or its functional equivalent" and that the act of the detective introducing himself was "not reasonably likely to elicit an incriminating response." Jackson, 150 A.D.3d at 1026. The Court finds that this conclusion was not contrary to, nor an unreasonable application of, clearly established federal law.

"Statements obtained in violation of Miranda are of course subject to a prophylactic rule of exclusion." United States v. Gonzalez, 764 F.3d 159, 165 (2d Cir. 2014). "Miranda set[s] forth rules of police procedure applicable to 'custodial interrogation.'" Oregon v. Mathiason, 429 U.S. 492, 494 (1977). "[C]ustodial interrogation [] mean[s] questioning initiated by law

enforcement officers after a person has been taken into custody or otherwise deprived of his freedom of action in any significant way." Id. "[T]he definition of interrogation can extend only to words or actions on the part of police officers that they should have known were reasonably likely to elicit an incriminating response." Rhode Island v. Innis, 446 U.S. 291, 301–2 (1980). "Volunteered statements of any kind are not barred by the Fifth Amendment and their admissibility is not affected by" Miranda's holding. Miranda, 384 U.S. at 478.

Here, the hearing record demonstrates that Detective Favata did not question Petitioner. Prior to introducing himself, Detective Favata had been informed by his fellow officers that Petitioner had requested an attorney. Nonetheless, Detective Favata testified that he followed his standard practice of introducing himself to Petitioner, but that he did not ask Petitioner any questions. Instead, Petitioner volunteered two separate statements. First, Petitioner stated: "Nick, I know it's your job to get evidence against me. It's my job to protect myself. That's why I asked for an attorney. Don't be mad." (Hr'g Tr.-1 at 89:9-13.) Second, in response to Detective Favata telling Petitioner he he was just doing his job, which was not to be taken personally, and that he was not mad at Petitioner, Petitioner responded: "I know I'm going to jail for the rest of my life. I

was just a homeless guy that was taking a nap." (Hr'g Tr.-1 at 89:22-90:2). Thereafter, Detective Favata left the room.

Accordingly, as the trial court determined at the conclusion of the <u>Huntley</u> hearing, the record supports that Detective Favata's statements to Petitioner were not designed or construed to elicit an incriminating response; instead, Petitioner's statements were volunteered and spontaneous. Thus, the Appellate Division's affirmance of that decision was not contrary to, nor a violation of, clearly established Supreme Court law. Hence, Petitioner's statement claim does not support granting habeas relief.

B. <u>Improper Summation Comments Claim</u>

Petitioner argues that the prosecutor committed misconduct by making various improper comments, thereby denying him a fair trial. According to Petitioner, the following summation comments by the prosecution denied his right to a fair trial: (1) comments that denigrated defense counsel, such as "spaghetti defense"; (2) referring to Petitioner as a "patsy"; (3) commenting on Petitioner invoking his right to counsel; (4) arguing that the cooperating witnesses each only knew their piece of the puzzle; and (5) appealing to the jury's sympathy. (Pet. at ECF pp. 79-82.)

Petitioner raised the same arguments in his direct appeal. (<u>See</u> App. Div. Br., at pp. 47-52.) The Appellate Division

stated that his claim was "without merit" and that the "prosecutor's statements, for the most part, constituted fair comment on the evidence and the inferences to be drawn therefrom, or were fair response to defense counsel's comments during summation, and any improper statements were not so flagrant or pervasive as to deny the defendant a fair trial." Jackson, 150 A.D.3d at 1026.   Applying the deference required by AEDPA, the Court finds this claim is without merit.

"A criminal conviction 'is not to be lightly overturned on the basis of a prosecutor's comments standing alone' in an otherwise fair proceeding." Gonzalez v. Sullivan, 934 F.2d 419, 424 (2d Cir. 1991) (quoting United States v. Young, 470 U.S. 1, 11 (1985)); see also United States v. Elias, 285 F.3d 183, 190 (2d Cir. 2002).  To amount to constitutional error, "it is not enough that the prosecutor's remarks were undesirable or even universally condemned."  Darden v. Wainwright, 477 U.S. 168, 181 (1986) (internal quotation marks and citation omitted).  Rather, the prosecutor's comments "must represent 'egregious misconduct.'" Celleri v. Marshall, No. 07-CV-4114, 2009 WL 1269754, at *17 (E.D.N.Y. May 6, 2009) (quoting Donnelly, 416 U.S. at 647); see also Shareef, 190 F.3d at 78 ("Remarks of the prosecutor in summation do not amount to a denial of due process unless they constitute 'egregious misconduct.'" (internal quote omitted)).  To warrant relief, the Court must conclude that the comments "'so

infected the trial with unfairness as to make the resulting conviction a denial of due process.'" Darden, 477 U.S. at 181 (quoting Donnelly, at 643).

Petitioner argues that the prosecutor improperly commented on him invoking his right to counsel after his arrest. (Pet. at ECF p. 81.)  However, the prosecutor's comment was made in the context of rebutting defense counsel's argument that Steven White should have been aggressively pursued as a suspect.   In defense counsel's closing argument, he called upon the prosecutor to explain why White was not pursued.  (Tr.-2 at 1276:17-20.)  In response, the prosecutor explained that White invoked his right to counsel, and, as such, could not be questioned, the same way that Petitioner invoked his right to counsel and was not questioned. (Tr.-2 at 1334:15-18.)   The prosecutor was not making any assertions or asking that any conclusions be drawn based upon Petitioner invoking his Fifth Amendment right; instead, he was directly responding to defense counsel.   In any event, it is permissible and appropriate for a prosecutor to make such an argument by drawing inferences from the evidence presented at trial.  See Cooper v. Costello, No. 93-CV-5670, 1996 WL 1088929, at *15 (E.D.N.Y. July 23, 1996).  The prosecutor clearly made an argument based on the trial testimony.  Thus, the prosecutor's summation comments do not amount to egregious misconduct.

Petitioner also argues that the prosecution denigrated defense counsel by arguing that the defense theory was a "spaghetti defense," i.e., that defense counsel was trying to throw as many explanations as possible out to see what would "stick". (Pet. at ECF p. 79.) The prosecution is permitted to rebut arguments raised during a defendant's summation, "'even to the extent of permitting the prosecutor to inject his view of the facts to counter the defense counsel's view of the facts.'" Readdon v. Senkowski, No. 96-CV-4722, 1998 WL 720682, at *13 (S.D.N.Y. Oct. 13, 1998) (quoting Orr v. Schaeffer, 460 F. Supp. 964, 967 (S.D.N.Y. 1978)). "Where a prosecutor's statement is responsive to comments made by defense counsel, the prejudicial effect of such objectionable statements is diminished." Pilgrim v. Keane, No. 97-CV-2148, 2000 WL 1772653 at *3 (E.D.N.Y. Nov. 15, 2000).

Petitioner further argues that the prosecutor vouched for the witnesses' credibility by asserting that each cooperating witness knew only his or her respective piece to the puzzle. (Pet. at ECF p. 81.) The arguments made by the prosecutor regarding why the jury could rely on the testimony of Natalie Desir were in direct response to arguments made by defense counsel during summation. In particular, during defense counsel's summation, defense counsel argued that Briggs and Desir were the masterminds behind the burglary and played Petitioner as a patsy. (Tr.-2 at 1250:8-13.) Even if the rebuttal comments made by the prosecutor

23

were objectionable, "the prejudicial effect of such objectionable statements is diminished" as the comments were made in direct response to defense counsel's argument. Keane, 2000 WL 1772653 at *3. As such, the prosecutor's comment regarding the credibility of the civilian witnesses was fair argument and does not rise to the level of egregious misconduct. Petitioner also contends that the prosecutor's comment represented testimony, because there was no evidence at trial that suggested that the witnesses only knew their "piece of the puzzle." (Pet. at ECF 81.) However, the testimony at trial supported that Briggs and Desir had never met, let alone colluded, either before or after August 28, 2009. (Tr.-1 at 1139:3-5; 1152:20-25.)

The prosecutor's comment that "[w]e live in a world where Elizabeth Careccia can't even play with her little baby without getting shot" -- in what is commonly referred to as a "safe streets" argument -- was not an appropriate summation argument. However, while inappropriate, it was no worse than other comments that other courts have found do not warrant habeas relief. See Darden, 477 U.S. at 180 (denying habeas relief where the prosecutor referred to the defendant as an "animal," among other offensive comments); Jackson v. Conway, 763 F.3d 115, 149 (2d Cir. 2014) ("[T]he prosecutor's characterization of Jackson in her opening statement as 'twisted' and 'sadistic' was no more inflammatory than the statements made by the prosecutor in Darden, which the

Court found did not warrant habeas relief.") (internal quotation marks omitted); see also Park v. Matthews, 567 U.S. 37, 47 (2012) (noting that "even if the [prosecutor's] comment is understood as directing the jury's attention to inappropriate considerations, that would not establish that the Kentucky Supreme Court's rejection of the Darden prosecutorial misconduct claim 'was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement.'" (quoting Harrington v. Richter, 562 U.S. 58, 103 (2011))).  As such, Petitioner's claim that the prosecution's summation commentary sought to appeal to the jury's sympathies does not warrant habeas relief.

Petitioner has not established that the state court's rejection of his prosecutorial misconduct claim was contrary to or an unreasonable application of federal law or an unreasonable determination of the facts.  Accordingly, Petitioner's prosecutorial misconduct claim is denied in its entirety.

C. Trial Court Error Claim

Petitioner claims that he is entitled to habeas relief on the grounds that the trial court made two errors with respect to the jury: (1) that the trial court improperly charged the jury on recent exclusive possession; and (2) that the trial court improperly expanded a readback request of Detective Favata's testimony. (Pet. at ECF pp. 85-87.)  Petitioner's claim was denied

on appeal by the Appellate Division, finding that Petitioner's "remaining contentions are without merit." Jackson, 150 A.D.3d at 1026.  For the following reasons, this claim is denied.

      1. Jury Instruction Claim

      Petitioner argues that the trial court violated his right to a fair trial by charging the jury on recent and exclusive possession; the charge was at the prosecution's request and over defense counsel's objection.  (Pet. at ECF pp. 85-86.)  Petitioner contends that the charge was prejudicial because there was no proof that he was in possession of any stolen property.  For the following reasons, Petitioner's claim fails.

      "A jury charge in a state trial is normally a matter of state law and is not reviewable on federal habeas corpus absent a showing that the alleged errors were so serious as to deprive defendant of a federal constitutional right." U.S. ex rel. Smith v. Montanye, 505 F.2d 1355, 1359 (2d Cir. 1974) ("Before a federal court may overturn a conviction resulting from a state trial in which this instruction was used, it must be established not merely that the instruction is undesirable, erroneous, or even 'universally condemned,' but that it violated some right which was guaranteed . . . by the Fourteenth Amendment." (quoting Cupp v. Naughten, 414 U.S. 141, 146 (1973))).  As such, Petitioner must show that "the ailing instruction by itself so infected the entire trial that the resulting conviction violates due process." Cupp,

26

414 U.S. at 147.  Even where a jury instruction is erroneous, the error is harmless unless it results in "actual prejudice," meaning the error "had substantial and injurious effect or influence in determining the jury's verdict."  Brecht v. Abrahamson, 507 U.S. 619, 637 (1993) (citations omitted).

Here, Petitioner has failed to establish that the trial court's jury instruction on recent and exclusive possession was erroneous as a matter of state law, let alone constituted an error of constitutional magnitude.  Pursuant to New York State law, "[e]vidence of unexplained or falsely explained possession of recently stolen property is sufficient to establish a prima facie case and to enable a jury to find guilt beyond a reasonable doubt." People v. Baskerville, 60 N.Y.2d 374, 382 (1983).  At trial, there was sufficient evidence to support that Petitioner entered Johnson's home by force, stole large quantities of cash at gunpoint, and injured the occupants during the robbery.  When Petitioner was apprehended shortly after the crime, alongside his accomplice Benjamin Thompson, both individuals had large amounts of cash in their possession.  As such, there was sufficient evidence to support a jury instruction regarding recent and exclusive possession of stolen property.

In turn, the Appellate Division's decision that this claim was without merit was not contrary to, or in violation of, clearly established federal law.  Because Petitioner's claim that

the recent and exclusive possession jury charge was erroneous is meritless, it fails to support habeas relief.

    2. <u>Jury Note Claim</u>

Petitioner also alleges that the trial court improperly handled a jury note requesting a readback of Detective Favata's testimony regarding Elizabeth's identification of Petitioner. (Pet. at ECF pp. 54-55.) Petitioner's claim is without merit.

New York Criminal Procedure Law § 310.30 establishes the procedure by which a trial court must respond to jury notes, <u>i.e.</u>, the trial court must give "such requested information" that it "deems proper." C.P.L. § 310.30. Additionally, even if the state court erred in denying Petitioner's claim of a violation of N.Y. Crim. Proc. Law § 310.30, "[v]iolations or errors of state law or procedure generally do not constitute grounds for habeas review," and "[a] claim premised on a violation of New York Criminal Procedure Law Section 310.30 does not allege a violation of a federally protected right." <u>Cornado v. Bellnier</u>, No. 10-CV-5265, 2012 WL 6644637, at *5 (S.D.N.Y. Sept. 20, 2012) (citations omitted), <u>report and recommendation adopted by</u> 2012 WL 6681692 (S.D.N.Y. Dec. 21, 2012). Hence, Petitioner's jury note claim does not provide a basis for granting federal habeas relief.[5]

---

[5] Even if the Court were to reach the merits of Petitioner's claim, it would be found to be meritless. The jury requested a readback of a portion of Detective Favata's testimony regarding Elizabeth's identification of Petitioner. The referenced

D. Ineffective Assistance of Appellate Counsel Claim

Petitioner contends that he received ineffective assistance of appellate counsel, arguing that counsel failed to raise on appeal that the trial court's suppression ruling effectively denied Petitioner his right to testify on his own behalf. (Pet. at ECF p. 15.) Petitioner's claim fails.

Petitioner raised this claim in his coram nobis petition. The Second Department denied the coram nobis petition, stating that Petitioner "has failed to establish that he was denied the effective assistance of appellate counsel."[6] Jackson, 166

---

testimony was a portion of cross-examination that was further clarified during redirect. Accordingly, the trial court expanded the readback to include the redirect testimony as well, thereby ensuring that the testimony was considered in context. (Tr.-2 at 1548:3-12.) Based upon this review of the record, the trial court followed the procedure required by C.P.L. § 310.30. Additionally, under federal law, "[w]hether to allow testimony to be reread to the jury is a matter committed to the sound discretion of the trial court." See United States v. McElroy, 910 F.2d 1016, 1026 (2d Cir. 1990) (citations omitted). As such, Petitioner's jury note claim is without merit and would fail.

[6] The Court notes Respondent's concession that "[P]etitioner's claim that he received ineffective assistance of appellate counsel did articulate a federal claim." (Opp'n Support Memo at ECF p. 23.) And, while the Appellate Division's "decision indicated that it decided [P]etitioner's claims upon the merits," citing a U.S. Supreme Court case in support of its decision, "the decision does not specifically state why petitioner's application failed." (See id.) However, the Court agrees with Respondent that this Court "may presume that the [Appellate Division] rejected [P]etitioner's claim that appellate counsel should have asserted that the trial court denied Jackson the right to testify at trial [] when it failed to suppress his statements because the complained of suppression ruling was correct." (Id. at ECF pp. 23-24 (citing Young v. Conway, 761 F. Supp. 2d 59, 74 (W.D.N.Y. 2011)).) See

A.D.3d at 803.  Petitioner's request for leave to appeal the denial of his coram nobis petition was denied by the New York Court of Appeals.  Jackson, 32 N.Y.3d at 1205.  Therefore, Petitioner has properly exhausted his claim.  However, this claim lacks merit.

As a threshold matter, the Strickland standard for ineffective assistance of trial counsel also applies to appellate counsel.  See Smith v. Robbins, 528 U.S. 259, 285 (2000).  "Accordingly, a petitioner alleging ineffective assistance of appellate counsel must prove both that (1) appellate counsel acted unreasonably in failing to raise a particular issue on appeal, and (2) absent counsel's deficient performance, there was a reasonable probability that defendant's appeal would have been successful before the state's highest court."  Rush v. Artuz, No. 99-CV-2840, 2009 WL 982418, at *20 (E.D.N.Y. Apr. 10, 2009).  Additionally, "[a]ppellate counsel need not (and should not) raise every nonfrivolous claim, but rather may select them in order to maximize the likelihood of success on appeal."  Id. at *21 (internal quotation marks and citations omitted).  In this context, for a petitioner to demonstrate constitutionally deficient performance, petitioner must show that "counsel omitted significant and obvious

---

Williams v. Goord, 277 F. Supp. 2d 309, 318 (S.D.N.Y. 2003) ("When a state appellate court affirms the denial of a claim without comment, this Court must look to the last 'reasoned' state court opinion to determine and presume the state appellate court's reasoning.") (citing Ylst v. Nunnemaker, 501 U.S. 797, 803 (2003)).

issues while pursuing issues that were clearly and significantly weaker." <u>Mayo v. Henderson</u>, 13 F.3d 528, 533 (2d Cir. 1994).

Here, Petitioner argues that appellate counsel's representation was deficient and his performance was prejudicial because said counsel failed to argue Plaintiff was denied a fair trial as a result of the trial court's suppression ruling, which deprived Petitioner of his right to testify on his own behalf at trial. (Pet. at ECF p. 90.) According to Petitioner, he had the right to present his "own version of events in [his] own words." (<u>Id.</u> at ECF pp. 89-90; <u>see also id.</u> at ECF p. 90 ("The jury would want to hear from the Petitioner in his own words what he was doing on the day in question and his explanations as to the allegations made by the People.").) However, Petitioner contends he "was deprived of this opportunity to do so due to the trial court's ruling that [Petitioner's] alleged statement[s to Detective Favata] would be used against him in the event that he chose to testify" and "was forced to chose [<u>sic</u>] between standing silent in front of the jury or testifying and allowing the jury to hear an alleged state that he knew he never made, but which was extremely prejudicial to him." (<u>Id.</u> at ECF pp. 90-91.) Petitioner's argument is meritless.

First, Petitioner's argument is based on the faulty premise that he had to choose between staying silent or testifying and then having the jury hear the prejudicial statements attributed

to him.  Not so.  Because his statements to Detective Favata were not suppressed, Detective Favata testified to the substance of those statements on his direct testimony during the prosecution's direct case.  (See Tr.-1 at 995:3-11.)  These statements were not reserved to confront Petitioner on cross examination had he taken the stand in his own defense, as Petitioner argues; instead, they were already before the jury to consider as part of the evidence against him.  Thus, failure to raise this frivolous and factually inaccurate claim on appeal did not constitute deficient performance.

Second, Petitioner was not prejudiced as a result of appellate counsel's performance.  As Respondent aptly states: "Appellate counsel raised the propriety of the trial court's suppression ruling in petitioner's direct appeal." (Opp'n Support Memo, ECF No. 15-1, at ECF p. 24.)  The Second Department disagreed and, instead, agreed with the lower court that Petitioner's statements to Detective Favata were spontaneous and not the result of an interrogation or its functional equivalent.  Jackson, 150 A.D. 3 at 1026.  The Appellate Division's holding was not contrary to, or in violation of, clearly established federal law.  Moreover, because Petitioner's suppression claim lacked merit, he was not prejudiced by his appellate counsel's failure to assert it.  See, e.g., Ramirez v. Fischer, Nos. 01-CV-0499, 03-MC-0066, 2003 WL 22964570, *10 (E.D.N.Y. Sept. 22, 2003) (finding appellate counsel

not required to raise a claim where the record and state law did not support it). Accordingly, Petitioner's ineffective assistance of appellate counsel claim does not support granting habeas relief.

<u>CONCLUSION</u>

Accordingly, **IT IS HEREBY ORDERED** that:

(A) Petitioner's Petition (ECF No. 1) is **DENIED**;

(B) The Court declines to issue a certificate of appealability because the Petitioner has not made a substantial showing that he was denied a constitutional right. <u>See</u> 28 U.S.C. § 2253(c)(2);

(C) The Court certifies that any appeal of this Order would not be taken in good faith, and thus <u>in forma pauperis</u> status is denied for the purposes of any appeal. <u>Coppedge v. United States</u>, 369 U.S. 438, 444-45 (1962);

(D) The Clerk of the Court is to:

(1) close this case; and

(2) mail a copy of this Order to the <u>pro se</u> litigant, placing the notation "LEGAL MAIL" on the mailing envelope.

**SO ORDERED.**

_/s/ JOANNA SEYBERT_____
Joanna Seybert, U.S.D.J.

Dated:   March 13, 2023
         Central Islip, New York